Angela **WEXELMAN**,
Petitioner/Respondent,

v.

Daniel J. **DONNELLY**,
Respondent/Appellant.

No. 55674.

Missouri Court of Appeals,
Eastern District,
Division Four.

Nov. 21, 1989.

Mary Ann Weems, Clayton, for respondent/appellant.

James Carmody and William P. Grant, Clayton, for petitioner/respondent.

CARL R. GAERTNER, Judge.

Appellant (Father) appeals trial court's order modifying child support and temporary custody provided under original decree of dissolution. We affirm.

Father and respondent (Mother) were married in 1979. They had two sons during the marriage, Daniel, born December

11, 1979, and John, born April 24, 1981. The marriage was dissolved by the Circuit Court of St. Louis County on March 18, 1983. Under the terms of the decree Father was ordered to pay $300 per child per month for child support and was granted temporary custody on alternating weekends, certain holidays and for two weeks during the summer. Mother filed a motion to modify the decree on May 20, 1985, requesting an increase in child support and termination of Father's custody, substituting supervised visitation.

After the hearing on the matter, the court increased the amount of support to $1,100 per child retroactive to November 1, 1987, and curtailed Father's custody by limiting it to every Tuesday from 5:00 p.m. to 8:00 p.m. subject to monitoring by the court's Domestic Relations Services. The court also ordered Husband to pay $5,000 for Mother's attorney fees. Father's points on appeal allege insufficient evidence to support the curtailment of custody and the increase in child support. He also challenges the retroactivity of the increase and award of attorney fees. Upon reviewing the evidence, we find there was sufficient evidence to support the modification and affirm the trial court.

The evidence at the hearing revealed that while the couple was married, Father was president and publisher of Eastside Publications, part of a chain of newspapers his family then owned. His salary was approximately $50,000 per year at the time of dissolution. Mother testified that Father's family always made certain that she and the children were well provided for, providing them with many luxuries and privileges. At the time of dissolution the children were three and one and one-half years old, and at the time of the modification hearing they were eight and one-half and seven years old. Over time their needs had changed resulting in more expenses. For example, Daniel was seeing a psychologist once a week, amounting to an expense of $85 per week. John, likewise, was to begin seeing a psychologist, also at a rate of $85 per week. Mother testified that she was currently spending $250 for the two sons for recreation, for activities such as sports, camps, movies, and family outings. She testified that she could not afford to send them to summer camp the previous summer, but had sent them the summer before that and would like to continue to do so. The boys had difficulty in reading and school officials recommended that they see a reading tutor, which Mother said she could not afford. This expense was estimated at $200 per month. The children were attending public schools, but Mother wanted them to attend parochial schools and was unable to afford it. She testified that she and Father had discussed sending the children to parochial schools during the marriage.

Father testified that his family sold its newspaper business in August 1984. Father receives money from the sale periodically, which is put into a trust fund. He lives on the money he receives from the trust. Father was required to sign a non-compete agreement as part of the sale, and is now training to become a pilot and plans to start an aviation company. Income tax returns admitted into evidence showed that for the year 1986 Father received income from interest and other sources, including the non-compete agreement, of $230,000. For 1987 the figure was $283,000. In ruling upon a writ of prohibition pertaining to discovery in this case, this court concluded that because Father had judicially admitted "... that he has ample financial resources to meet the needs of his children, and he has produced documentation sufficient to demonstrate this fact as a matter of law," further inquiry into his financial affairs was unnecessary. *State ex rel. Donnelly v. McAllister*, 753 S.W.2d 120, 121 (Mo. App.1988). Mother testified that her current husband earned approximately $90,000 in 1987, $79,782 in 1986, and $60,263 in 1985. For the first six months of 1988 his earnings were $23,943. Mother has not worked during her present marriage, nor did she work during the first. Between marriages she was employed selling computers.

Regarding the custody and visitation issue, Father testified that following the dissolution he saw the children as prescribed

under the terms of the decree until he separated from his second wife. At that time Mother began permitting Father to visit the children for short periods of time at her residence. Mother alleged that Father had a drug and alcohol problem, so she was afraid to turn the children over to him. Father denied any such problem. However, he had twice been involved in outpatient drug and alcohol seminars, once at age 17 and once after he separated from his second wife. He had also been arrested on a DWI charge in 1981. Mother testified that she was aware of his drug and alcohol problem during the marriage and that she had smelled marijuana on him on several occasions. Andrea Clark, of the St. Louis County Juvenile Court, performs family studies in cases involving child custody. She testified that during their meeting, Father refused to answer her questions regarding his alleged chemical dependency and was uncooperative.

*Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo.banc 1976) provides the standard of review. Therefore, we must uphold the judgment of the trial court unless there is no substantial evidence to support it, it is against the weight of the evidence or it erroneously declares or applies the law. According to the statute, "[S]upport may be modified only upon a showing of changed circumstances so substantial and continuing as to make the terms unreasonable." § 452.370.1 RSMo.1986. In determining whether a substantial change has occurred the court is to consider the financial resources of both parties. This includes the extent to which a spouse of either party can share in the expenses of supporting the children. *Id.*

Father claims that the trial court gave undue weight to Mother's testimony regarding the lavish lifestyle she enjoyed while married to Father as opposed to her current lifestyle, where she enjoys fewer luxuries and privileges. The record does not reflect this. To the contrary, there is an abundance of testimony regarding the changing needs of the two sons over the five years that lapsed between the time of the decree and the modification hearing. In *Cigno v. Cigno*, 723 S.W.2d 930, 932

(Mo.App.1987) this court recognized that the motion to modify did not "follow on the heels of a prior support order," but came after a four and one-half year passage of time during which the children's needs had changed whereby they were of driving age and needed an automobile and insurance and had increased household expenses. Similarly, in the present case there was substantial evidence that the boys' needs had changed. The cost for the psychologist and tutor alone adds over $500 per month per child. At the time of the original decree the children were very young and were not even in school. The children have since made the transition into school and are consuming more in terms of food and clothing.

■ In challenging the sufficiency of the evidence to support the trial court's finding of a substantial change in circumstances warranting an increase in child support, Father seizes upon a phrase from our opinion in *Etling v. Etling*, 747 S.W.2d 285, 287 (Mo.App.1988): "Expected and predictable increases are presumed to have been taken into account in the original award." In so ruling we repeatedly expressed the applicability of this principle to instances where a short period of time has elapsed between the original award and the modification motion. In *Etling*, the motion to modify was filed two weeks after the mandate affirming the original award and was supported only by generalized testimony relating to the effect upon regular expenses of inflation and the inevitable aging of the children. Here, Mother presented evidence 5½ years after the original decree of specific and unanticipated expenses for psychological care, tutoring and other needs of the children not recognized until they entered school. Under the evidence in this case the trial court's finding of a substantial change in circumstances is amply supported.

■ Moreover, although the substantial increase in Father's income, standing alone, would not supply reason for an increase in child support, it becomes a relevant factor upon a showing of a change in circumstanc-

es which leaves needs of the children unmet. *Etling*, at 287; *Bellis v. Bellis*, 664 S.W.2d 12, 13 (Mo.App.1984). Under the circumstances shown by the evidence, it would be unreasonable to leave the children's counseling, tutoring and other needs unfulfilled by not adjusting the amount of support Father is well able to provide.

■ At one point during the hearing the court concluded that since Father conceded his ability to meet the children's needs the only task was to "show what the needs of the children are, and this court will be guided accordingly." We do not feel this statement, which Father takes out of context, was a misstatement of the law as he contends. The court made this statement in the course of counsel's cross-examination of Father when inquiring into his income. The court was simply attempting to focus on the needs of the children, including their changing needs, as opposed to Father's admitted ability to pay. The court was not, as Father attempts to color it, signing Father's name to a blank check. Point denied.

■ In his next point, Father claims the court erred in curtailing his custody to three hours per week and requiring monitored visitation because there was no evidence of a change in circumstances of either the children or Father since the original decree. Section 452.410 RSMo.1986 provides that a court may not modify a custody order unless it finds that a change has occurred in the circumstances of the child or parent and that modification is necessary to serve the child's best interests. Section 452.400.2 RSMo.1986 provides that a court may modify a visitation order if it would serve the best interests of the child, but only if it finds the existing visitation would endanger the child's physical health or impair his emotional development.

We view the evidence in the light most supportive of the court's order, as no findings of fact were requested or made. *Young v. Ray America, Inc.*, 673 S.W.2d 74 (Mo.App.1984). It appears that before, during, and after the marriage Father had problems with alcohol abuse. Following the dissolution in 1983, Father exercised his rights of temporary custody of the children on alternate weekends in accordance with the separation agreement incorporated in the decree. Sometime in 1985, Mother began to refuse to permit the children to go in an automobile with the Father because of what she believed to be his drinking problem. This precipitated Father's filing of a motion to cite Mother for contempt. That motion was heard and denied on June 25, 1985. On the same date the court ordered a child custody study to be made by the domestic relations services unit of the juvenile division of the circuit court. This study was frustrated when Father became upset over questions asked by a social worker and abruptly left her office. Although he denies any problem, Father admitted participating for the second time in a hospital drug and alcohol abuse program in 1985. Mother testified she permitted Father to visit with the children at her home, an opportunity he exercised on the average of two times per month. She testified that on some of these occasions his behavior was consistent with his conduct during the marriage at times she knew he had been using alcohol or drugs. On the occasion of one visitation with the children Father and the friend who had accompanied him both smelled of marijuana.

Father argues that the "critical flaw" in Mother's proof is that the evidence relating to his drinking and drug use shows no changes since the date of the original decree which granted him rights of temporary custody. Section 452.410 precludes modification of a prior custody decree unless the court finds "...upon the basis of facts that have arisen since the prior decree or that were unknown to the court at the time of the prior decree, that a change has occurred in the circumstances of the child or his custodian and that the modification is necessary to serve the best interests of the child." We do not know what, if any, facts pertaining to Father's use of alcohol or drugs were before the court at the time of the 1983 decree which incorporated the temporary custody provision of the separation agreement. We do know

from the record of this hearing that the court's order awarding Father weekly periods of temporary custody monitored by the domestic relations services is more generous than the every other week visitation in Mother's home which has, in fact if not by decree, been in effect since the court denied Father's petition to hold Mother in contempt. The evidence supports the conclusion that the trial court found it necessary in the best interests of the children to establish weekly periods of supervised custody. It is for the trial court to assess the credibility of the witnesses, *Lyles v. Lyles,* 710 S.W.2d 440, 442 (Mo.App.1986), and we may not substitute our judgment for that of the trial judge nor give weight to evidence he chose not to accept. *Brown v. Brown,* 676 S.W.2d 519, 520 (Mo.banc 1984). Point denied.

█ Father next challenges the retroactivity of the support increase. The original motion for modification was filed in May, 1985, but was not heard until September, 1988, due in part to the writ proceedings Father initiated. The award was made retroactive to November 1, 1987. It is within the court's discretion to make the award retroactive and we will not reverse that decision absent a clear abuse. *Reif v. Reif,* 750 S.W.2d 521, 522 (Mo.App.1988). Although acknowledging the authority of the court to make the modification of support retroactive, Father argues that since there is no basis in the record for choosing November 1, 1987 as the effective date of the modification, such action is arbitrary and an abuse of discretion. In *Stitt v. Stitt,* 617 S.W.2d 645 (Mo.App.1981), the court considered an order that an increase in child support be made retroactive to a date between the filing of a motion and the hearing. The court stated:

"This court concludes that, as opposed to adopting an inflexible rule that such modifications be made retroactive to a prescribed date, (whether the date of the filing of the motion or the hearing date), such determination is best left to the discretion of the circuit court, thus enabling the court to consider all factors relevant to the issue and to in turn balance the equities as called for by the particular facts and circumstances of each case." *Id.* at 648.

We agree. We need not resort to speculation and conjecture in order to fathom what may have been in the mind of the trial judge in determining an appropriate date. It is the function of the trial court to "balance the equities" and we will not substitute our judgment for his.

█ Finally, Father asserts the court improperly awarded Mother $5,000 for her attorney's fees. Mother's counsel testified that she expended a total of 59 hours in connection with this litigation. Father seeks to distinguish time spent on the writ of prohibition and the contempt proceedings from time devoted purely to the modification proceedings. It is entirely proper for the court to consider the conduct of one party in causing the other party to incur fees. *Burrus v. Burrus,* 754 S.W.2d 882, 888 (Mo.App.1988). We find no abuse of discretion in the allowance of the award for attorney's fees.

The judgment is affirmed.

SMITH, P.J., and SATZ, J., concur.